UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES J. HAMILTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:14-CV-766-CEJ |
| ) | |
| JONNA GRUBBS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the joint motion of defendant LeAnn Vogt for summary judgment, pursuant to Fed. R. Civ. P. 56(a). The issues are fully briefed.

Plaintiff James J. Hamilton, an inmate confined at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri, brings this action pursuant to 42 U.S.C. § 1983. In Count III of the fourth amended complaint, plaintiff claims that Vogt, a licensed clinical social worker, was deliberately indifferent to his serious medical needs.

### I. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving

party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. Background

From January 17, 2014, until March 13, 2014, plaintiff was confined in the administrative segregation unit in House 1. After a brief transfer to a different unit, plaintiff returned to administrative segregation in House 1 on April 9

Vogt, an employee of MHM Correctional Services, Inc., was contracted to provide mental health services to prisoners at the ERDCC. Her duties included conducting weekly rounds of the administrative segregation unit in House 1, assessing the prisoners' mental health. According to plaintiff, Vogt's primary role was to determine if prisoners were homicidal or suicidal. She examined plaintiff once per week while he was confined in House 1, inquiring whether he was intent on harming himself or others. He admits that he was neither homicidal nor suicidal at any point during his confinement.

2

Plaintiff alleges he began suffering from symptoms of PTSD and psycho-affective disorder in January 2014 while confined in House 1. At his deposition plaintiff alleged his symptoms included "flashbacks," "cold chills," "hurting" badly, and experiencing a state "between waking and sleep," which he described as a "mental living hell." *Id.* at 75–77. Plaintiff admits he did not alert Vogt to his condition during his first few encounters with her.

Once his symptoms became more acute, plaintiff filed at least one health service request (HSR). In that HSR, dated January 27, 2014, plaintiff reported having been diagnosed with schizoaffective disorder, PTSD, "multiple personality disorder," and epilepsy. [Doc. #118-5] He also wrote: "need sleep psyc & medication bad." *Id.* Plaintiff did not identify any extant symptoms on that form, only his past diagnoses and his present desire for sleep and to receive psychiatric services and medications. *See id.* It is assumed Vogt was aware of the HSR.

In addition to the HSR, the record shows plaintiff was examined by other medical professionals while confined in House 1. Plaintiff denied mental health complaints on twenty-one separate occasions from January 17 through March 13. [Doc. #118-6] The treatment providers' notes specifically reflect that plaintiff denied mental health complaints on January 24 and January 29, just days before and after he filed the HSR on January 27. *Id.* at 4. Though plaintiff argues that those records do not reflect his actual condition, he does not deny he had nearly two dozen encounters with other medical staff during the timeframe at issue. He also does not contend that he asked them to refer him to a psychiatrist, told them about his alleged symptoms, or demanded medication. Plaintiff also offers no evidence to suggest that the records are inaccurate. He does not accuse any

3

medical professional other than Vogt of withholding psychiatric treatment or medications from him.

Plaintiff testified in deposition that on February 12, 2014, he first told Vogt that he had "a history of mental illness" and that he needed "to see the psychiatrist." [Docs. ##118-3 at 9, 13; 128-2 at 3–4]. Plaintiff initially told Vogt that he was "not okay." [Doc. #123-10 at 75–76] When Vogt inquired what issues plaintiff was experiencing plaintiff responded: "I need to see the psychiatrist." *Id.* He also referenced filing "multiple" HSRs. *Id.* Plaintiff testified that Vogt said she had received the HSRs, but that she was "not going to refer [him] to see the psychiatrist," because she thought he "want[ed] sleeping medication" to "help [him] sleep through" his time in administrative segregation. *Id.* at 76.

Plaintiff demurred, telling Vogt, "you don't know my mental health history," and reiterating he needed to see the psychiatrist. *Id.* at 105. He "tried to explain it to her," that he has "a long history of mental health issues, dating back 25 years," that he was "not trying to get sleeping pills," and that he needed "to see the psychiatrist." *Id.* at 76, 104. Vogt again refused to refer him.

In his deposition, plaintiff testified that he told Vogt that he "would like some sleep," that he had a "long history of post-traumatic stress disorder" and "psycho-affective disorder," and that he "need[ed] to see the psychiatrist." *Id.* at 76, 105, 109. He testified he did not remember going into detail with Vogt about his history of brain injuries or his mental health, "other than standing at the door and telling her that she didn't understand [his] mental health history, that [he] ha[s] a long history of [PTSD], psycho-affective disorder, [and] that she should let [him] see the psychiatrist." *Id.* at 109. Plaintiff did not testify that he described to Vogt the

4

symptoms he was experiencing, either on February 12 or at any other time before April 15.

Vogt's treatment notes from her February 12 encounter with plaintiff show that plaintiff reported no "mental health concerns," and that his "sleep and appetite" were "good." [Doc. #118-4 at 5] In Vogt's assessment, plaintiff was "[c]alm, cooperative, alert, oriented," and in "no acute distress." *Id.* He "did not exhibit" signs or symptoms of "significant mental illness" that "would clinically contraindicate continued placement in administrative segregation," and his "behavior and mental health [did] not appear to be negatively impacted by placement in" administrative segregation. *Id.* at 6. His hygiene was "adequate," and his mood was "euthymic," with congruent affect. *Id.* at 5. His response to questions indicated his thoughts were "organized" and "logical." *Id.* at 5–6. Vogt planned to continue to monitor plaintiff's condition. *Id.* Further notes show Vogt assessed plaintiff weekly until he was transferred to House 2, each time noting no mental health issues. *Id.* at 6–7.

Plaintiff was transferred to House 2 on March 13, 2014. There, he was seen by mental health and medical staff, but he was not under Vogt's care during this time. Plaintiff submits no evidence that he requested psychiatric care while in House 2. Although plaintiff filed a grievance in which he described physical injuries he sustained in an assault, he mentioned no mental health complaints. [Doc. #118-10]

When plaintiff was transferred back to House 1 on April 9, his physical and mental status was documented, with no reported mental health complaints. [Doc. #118-6 at 14–15] Plaintiff declared a "crisis" on April 15, and Vogt examined him

5

that day in response. [Docs. ##118-2 at 3; 118-4 at 7] As relevant here, Vogt's treatment notes indicate plaintiff "appeared alert," and his "thoughts were logical and goal directed." [Doc. #118-3 at 7] His mood appeared anxious. *Id.* But he "exhibited no overt" signs or symptoms "of depression, mania[,] or psychosis." *Id.* at 8. His eye contact was good, his speech was within normal limits, and his appearance was neat. *Id.* He denied suicidal or homicidal thoughts, but he was "teary eyed when he talked about how he was feeling." *Id.* Vogt determined that plaintiff's PTSD "may[]be returning." *Id.* She instituted a treatment plan, which included "discuss[ing] with [the] treatment team how to proceed with [plaintiff's] case" and continued monitoring. *Id.* She then met with other medical staff to discuss how to proceed.

On April 22, 2014, Vogt followed up with plaintiff to "gather more information for a referral to the treatment team," because plaintiff "said he took medication" while in MDOC custody "and there is not [a] record of it." [Doc. #118-4 at 8] Plaintiff does not dispute that none of the records then available to Vogt supported his allegations of having previously received mental health treatment. On April 28, Vogt and the treatment team agreed to refer plaintiff to a psychiatrist. *Id.* at 9. That referral was made the same day. [Doc. #118-7] On May 5, plaintiff received an initial psychiatric evaluation; he was prescribed medication for anxiety. [Doc. #118-4 at 9–11 and # 128-7 at 3]

### III. Discussion

In Count III, plaintiff claims that Vogt delayed his access to a psychiatrist and psychotropic medications, in deliberate indifference to his serious medical needs. Plaintiff does not take issue with Vogt's actions from April 15 until the

6

referral was made and he began receiving treatment. As to his time in House 2, though he was not under Vogt's care there, plaintiff maintains that if Vogt had acted to secure him psychiatric services before the transfer, he would not have continued to experience symptoms while confined elsewhere. Thus, the claim against Vogt is based on the delay of two months, from February 14 until April 15, before she referred plaintiff for psychiatric treatment.

In response to Vogt's motion for summary judgment plaintiff submitted a declaration that contradicts his deposition testimony about the events of February 12. He avers in the declaration that during the February 12 examination he "explained to" Vogt that he "was having mental flashbacks, sleep terrors, and hot and cold flashes." [Doc. #128-2 at 4] By contrast, in his deposition plaintiff made no mention of those symptoms and he testified only to having referenced his mental health history and his desire for psychiatric care and medication. Therefore, plaintiff's contradictory, self-serving revision to his prior testimony will not be considered. *See Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015) (citing *Marathon Ashland Petroleum, L.L.C. v. Int'l Bhd. of Teamsters*, 300 F.3d 945, 951 (8th Cir. 2002), which held "that a witness's 'revised' testimony 'does not create an issue of disputed fact' necessary to defeat summary judgment"); *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015) ("A properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) ("A party should not be allowed to create issues of credibility by contradicting his own earlier testimony. Post-deposition contradictory affidavits are

7

admitted only when the prior deposition testimony shows confusion, and the subsequent affidavit helps explain the contradiction." (quotation marks and citation omitted)).

### A. Official capacity claim

Plaintiff sues Vogt in her individual and official capacities. The official capacity claim against Vogt is treated as a claim against MHM Correctional Services. *See Hamilton*, 452 F.3d at 973 (citing *Sanders*, 984 F.2d at 975–76, and holding that to "support a claim against" a private prison medical provider under § 1983, a prisoner "must show there was a policy, custom, or official action that inflicted an actionable injury"). Plaintiff does not allege Vogt has authority to set policies, practices, or customs on behalf of her employer. Further, no evidence of record demonstrates the alleged delay in providing plaintiff psychiatric treatment was caused by a policy, practice, or custom of the corporation, or of the corporation's state affiliate, the MDOC. Therefore, the official capacity claim fails as a matter of law.

### B. Deliberate indifference

"[T]he Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison [officials] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Plaintiff's claim with respect to Vogt is about delayed medical care.

8

Deliberate indifference involves both an objective and a subjective component. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). In the medical treatment context, the objective component requires a prisoner to demonstrate an objectively serious medical need. *Id.* "A medical need is objectively serious if it either has been 'diagnosed by a physician as requiring treatment' or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

When an "inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quotation marks and citations omitted). "To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment" of his condition. *Id.* (quotation marks and citation omitted). Where an "inmate submit[s] evidence documenting his diagnosis and treatment, but he offer[s] no evidence establishing that any delay in treatment had a detrimental effect, the inmate fail[s] to raise a genuine issue of fact on an essential element of his claim." *Jackson v. Riebold*, 815 F.3d 1114, 1119–20 (8th Cir. 2016) (quotation marks and citations omitted). However, the Eighth Circuit has not "decide[d] whether a viable deliberate-indifference claim exists based upon an allegation that the person suffered in great pain as a result of the delay in medical treatment." *Id.* at 1120 n.5.

"The subjective component" of a deliberate indifference claim "requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded," a prisoner's objectively serious medical need. *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (quotation marks and citation omitted). The subjective component requires "a mental state akin to criminal recklessness." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quotation marks and citation omitted). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

As to the actual knowledge prong, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). This is a factual inquiry; whether an official had the requisite knowledge may be inferred from circumstantial evidence or from the very fact that the risk of harm was obvious. *See Walton v. Dawson*, 752 F.3d 1109, 1119 (8th Cir. 2014).

> For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk to the inmate's health was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Coleman*, 114 F.3d at 786 (quoting *Farmer*, 511 U.S. at 842–43, and bracketing omitted).

As to the deliberately disregarded prong, the inquiry is whether the prison official "did not respond reasonably to" the prisoner's "medical needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997). "Medical malpractice alone . . . is not actionable under the Eighth Amendment." *Popoalii*, 512 F.3d at 499. A prisoner "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Id.* (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).

Consequently, "[n]egligent misdiagnosis does not create a cognizable claim under § 1983." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (quotation marks and citation omitted). "[I]n cases where some medical care is provided, a plaintiff is entitled to prove his case by establishing the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference." *Id.* (quotation marks and citation omitted). But "a healthcare provider need not accept as true medical judgments offered by their patients[,] but must make treatment decisions on the basis of many factors, only one of which is [a] patient's input." *Id.* at 772–73 (citations omitted).

Further, "[w]here the complaint involves treatment of a prisoner's sophisticated medical condition, expert testimony is required to show proof of causation." *Alberson v. Norris*, 458 F.3d 762, 765–66 (8th Cir. 2006). Even where a prisoner "suffer[s] from visible symptoms, a determination of whether [prison] personnel should have provided different treatment" or "diagnosed" a prisoner's sophisticated "illness earlier" is "not within the realm of lay understanding." *Id.* at 766 (quotation marks and citation omitted). Where the condition is "sophisticated,"

11

the "failure to produce expert testimony to prove that a lack of proper medical treatment" caused a prisoner's injury is "fatal to [his] deliberate indifference claim as a matter of law." *Id.* (quotation marks and citation omitted).

For several reasons, the deliberate indifference claim against Vogt fails as a matter of law. First, plaintiff was not under Vogt's care while confined in House 2 from March 13 until April 10. Plaintiff does not maintain he sought mental health treatment while in House 2, despite being examined by mental health professionals from whom he could have requested such treatment. Also, there is no evidence that Vogt interacted with him from April 10 until he declared a mental health crisis on April 15. He does not take issue with the referral process beginning on April 15, or the care he eventually received at Vogt's request. Therefore, Vogt's potential liability for unreasonably delaying plaintiff's treatment is limited to, at most, February 14 through March 13, 2014. *See Dulany*, 132 F.3d at 1240.

Second, plaintiff has introduced insufficient evidence for a jury to find that he had an objectively serious medical need from February 14 until March 13. Assuming plaintiff's mental health conditions were diagnosed in the 1990s, plaintiff admits that he had not been medicated or otherwise treated for those conditions for over a decade, and no records of such treatment exist. Therefore, in February 2014 there was no current diagnosis of a mental health condition requiring treatment. *See Scott*, 742 F.3d at 340.

Whether plaintiff's condition was objectively serious thus turns on the obviousness of the condition. *Id.* It is undisputed plaintiff's conditions did not manifest physical symptoms that would have been visible to a layperson. *See id.* Plaintiff did not testify to having ever told Vogt what those symptoms were from

February 14 through March 13. *See Laughlin*, 430 F.3d at 929. The obviousness of such sophisticated mental health conditions is a question a jury could answer only with expert witness testimony, which plaintiff has not submitted. *See Alberson*, 458 F.3d at 765–66. But even if he had, plaintiff also has not placed any verifying medical evidence or expert witness evidence in the record from which a reasonable jury could conclude the effect of his one-month delay in treatment was objectively serious. *Jackson*, 815 F.3d at 1119–20; *Laughlin*, 430 F.3d at 929. However, assuming *arguendo* his allegations of pain and psychological symptoms alone may qualify as objectively serious, *see Jackson*, 815 F.3d at 1120 n.5, the Court proceeds to discuss the subjective prong of his claim.

The evidence is insufficient for a reasonable jury to conclude Vogt knew plaintiff's condition was objectively serious until at least April 15, when she promptly acted to initiate treatment. *See Bender*, 385 F.3d at 1137. Plaintiff points to no evidence properly supporting his motion (*i.e.*, outside of his contradictory declaration) from which a jury could conclude that the risk of harm to him was obvious, where he did not tell Vogt of his symptoms. *See Walton*, 752 F.3d at 1119. But even if he had described those exact symptoms, they were not longstanding, pervasive, well-documented, or expressly noted in any of his medical records. *Coleman*, 114 F.3d at 78. Plaintiff does not contend that he reported to other mental health professionals, medical staff, or correctional officers any symptoms of a mental illness urgently in need of treatment. Thus, no evidence of record demonstrates or permits a reasonable inference that Vogt knew plaintiff had an objectively serious mental health condition at any point before April 15.

Finally, even if plaintiff recounted his symptoms to Vogt and even if that lone recitation were sufficient to satisfy the knowledge prong, his claim nevertheless fails on the deliberately disregarded prong. *See Dulany*, 132 F.3d at 1240. On this evidence no reasonable jury could conclude plaintiff's condition constitutionally required more than monitoring, which Vogt provided, and which therefore amounts to a mere disagreement with her treatment decision. *See Popoalii*, 512 F.3d at 499. If Vogt should have diagnosed plaintiff's condition as more serious and in need of more aggressive, urgent care, no evidence suggests such a misdiagnosis amounts to more than negligence. *See Allard*, 779 F.3d at 772. And plaintiff's view that he required more significant treatment is no evidence otherwise. *See id.* at 772–73. In any event, because plaintiff's mental illness is plainly a sophisticated medical condition, to survive summary judgment expert witness testimony would be required from which a reasonable jury could conclude Vogt was constitutionally obligated to provide more significant and immediate treatment. *See Alberson*, 458 F.3d at 765–66. The failure to introduce such evidence is fatal to the claim. *Id.*

\* \* \* \* \*

No genuine dispute of material fact precludes summary judgment on plaintiff's claim against Vogt for delayed medical treatment. Because no reasonable jury could conclude from this evidence that Vogt was deliberately indifferent for not referring him to a psychiatrist or affording him medication until April 15, 2014, Vogt's motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment of defendant LeAnn Vogt [Doc. #117] is **granted**.

Judgment will be entered in favor of defendant LeAnn Vogt at the conclusion of all proceedings in this case.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of January, 2017.