UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES J. HAMILTON,                 )
                                   )
            Plaintiff,             )
                                   )
      vs.                          )        Case No. 4:14-CV-766-CEJ
                                   )
JONNA GRUBBS, et al.,              )
                                   )
            Defendants.            )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant Broc Gremminger
for summary judgment, pursuant to Fed. R. Civ. P. 56(a). The issues are fully
briefed.

Plaintiff James J. Hamilton, an inmate confined at the Eastern Reception,
Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri, brings this
action pursuant to 42 U.S.C. § 1983. In Count I of the fourth amended complaint,
plaintiff claims that Gremminger, a corrections officer, failed to protect him from
assault by another inmate.

## II. Background

On January 17, 2014, plaintiff was housed in Wing A of House 3, the "honor
house." [Doc. #123-10 at 24]. Gremminger was one of the corrections officers
assigned to House 3. Prisoners in House 3 are often out of their cells at the same
time and are permitted to leave their cells to go to the "day area" in the center of
each wing. *Id.* Prisoners in House 3 also can close and lock the doors to their own
cells, though they need assistance from a corrections officer to unlock their cell
doors.

Wing A is monitored by a corrections officer stationed in a secured observation "bubble" adjacent to the wing. It is undisputed that at all relevant times a correctional officer was stationed in the bubble. The bubble is located on the same floor as and a few feet away from the day area. It is also 50-60 feet from plaintiff's cell. Prisoners can communicate orally with the officers in the bubble, though they are cautioned not to do so and warned they will receive conduct violations if they do.

Each cell in Wing A is equipped with an emergency call button. When a prisoner presses the button, an alert is triggered in the bubble, and the officer stationed there can send aid or remotely unlock the prisoner's door. Prisoners in House 3 often press their call buttons for non-emergency reasons—*e.g.,* if they are locked in their cells and simply wish to move into the day area. Plaintiff alleges that corrections officers in the bubble routinely respond to a prisoner's activation of his emergency call button by unlocking that prisoner's cell and assuming the prisoner is not in need of aid.

A corrections officer is sometimes, but not always, stationed at a desk in the day area. All officers in House 3 have duties throughout the house; no officer is assigned to continuously patrol a single wing. According to plaintiff, officers patrol Wing A approximately every thirty to sixty minutes. Consequently, there are times when no officer is present inside Wing A, though the wing remains monitored from the bubble.

If a prisoner in Wing A needs assistance, the prisoner is encouraged to speak to an officer located in the wing or to press his emergency call button, rather than attempting to communicate with the officer stationed in the bubble. A prisoner in

House 3 also has access to the entire house; he is free to leave his wing to seek assistance from any of the officers patrolling House 3.

Around noon on January 17, plaintiff was approached in the day area by another inmate, John Broyles, who demanded canteen items from him. Plaintiff refused, and Broyles threatened to physically harm him. Plaintiff walked to the desk in the day area but saw no officer there. He did not attempt to communicate with the officer in the bubble. As plaintiff began walking back to his cell, Broyles struck him on the shoulder and plaintiff hit Broyles in the jaw. Plaintiff looked at the bubble to see if the officer had seen the altercation, but she was "busy." *Id.* at 21. Plaintiff walked back to the desk to look for an officer, but the desk was unstaffed.

Plaintiff did not contact the officer in the bubble. Instead, he returned to his cell. Plaintiff left the cell door partially open, although he could have closed it completely and locked it. When plaintiff saw Broyles walking around in Wing A in an angry manner, he pushed the emergency call button in his cell. He heard a click in response, indicating the officer in the bubble was attempting to unlock the already-open door. He pressed the button again. The officer again triggered the door. Even though his attempt to solicit aid via the call button was unsuccessful, plaintiff did not close and lock his cell door, nor did he exit the cell to seek assistance from the officer in the bubble.

Approximately fifteen minutes later, Broyles entered plaintiff's cell and again assaulted him, injuring his head, face, and chest. After Broyles left, plaintiff walked to the day room desk. When he did not see an officer there, he returned to his cell. He did not press the call button, he did not attempt to seek assistance from the

bubble staff, and he did not leave Wing A to seek assistance elsewhere.

Approximately 20 minutes later, after another inmate reported the assault, corrections officers came to plaintiff's cell. Gremminger, who was assigned to House 3 on January 17, was among the officers who responded after learning of the assault. It is undisputed Gremminger had duties throughout House 3; however, he was not assigned to continuously patrol Wing A. The only evidence of record suggests Gremminger was carrying out his other duties elsewhere in House 3 at the time of the assaults. Plaintiff admits that he does not know where Gremminger was during the one-hour period between the first and second assaults.

Plaintiff had no history of being threatened or assaulted by Broyles or by other inmates prior to January 17. Plaintiff also never informed Gremminger that he had been threatened or was in danger of being assaulted. Plaintiff has presented no evidence of a pattern of inmate-on-inmate assaults or threats of assaults in Wing A, or in House 3 generally, or that Gremminger was aware of any such pattern. Finally, plaintiff does not allege that Gremminger knew about the threats Broyles made to plaintiff or about the assaults until well after they occurred. It is also not alleged that Gremminger was supposed to be present in Wing A at the time the acts against plaintiff were committed.

## II.  Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give

that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.  Discussion

In Count I, plaintiff asserts an Eighth Amendment violation based on the claim that Gremminger failed to protect him from the assaults. Plaintiff sues Gremminger in his official and individual capacities.

### A. Official capacity claim

An official capacity claim is "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Such a suit is, in all respects other than name, to be treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985), and *Monell v. Dep't of Soc. Servs.*,

436 U.S. 658, 694 (1978)). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Graham*, 473 U.S. at 166). To establish such liability under § 1983, a plaintiff "must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity," or of a private entity acting under color of law. *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted); *see Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993).

The official capacity claim against Gremminger is a claim against the Missouri Department of Corrections (MDOC). *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). To establish liability on the part of the MDOC, plaintiff "must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the" MDOC. *Moyle*, 571 F.3d at 817 (citation omitted). "A party opposing summary judgment is not permitted to merely rest on his pleadings but must instead set forth sufficient evidence from which a reasonable jury could find in his favor on all elements of his claims." *Johnson v. Hamilton*, 452 F.3d 967, 971–72 (8th Cir. 2006). Plaintiff has introduced no evidence establishing a genuine dispute of material fact from which a reasonable jury could conclude the MDOC has any custom, policy, or practice of failing to protect him.

Plaintiff has presented no evidence that his injury resulted from a deficiency in the MDOC policies or practices with respect to staffing. Indeed, the evidence shows that the plaintiff's wing and housing unit were continuously monitored by corrections officers. There is nothing to suggest that a different staffing or

monitoring arrangement would have provided better protection to plaintiff, given the absence of evidence of prior threats or assaults against plaintiff or against inmates in House 3 in general. *See Lenz v. Wade*, 490 F.3d 991, 994 (8th Cir. 2007) (explaining "a single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability"). In addition, plaintiff had access to an emergency call button, he could have reported his concerns about Broyles to the bubble officer, and he had the ability to close and lock his cell door. The fact that he elected not to take advantage of these safety measures is not the result of inadequate policies, practices, or customs of the MDOC.

The Court concludes that no reasonable jury could find on this evidence that the MDOC had a policy, practice, or custom of understaffing Wing A or House 3. Therefore, the plaintiff's official capacity claim against Gremminger fails as a matter of law.

### B. Failure to protect

Plaintiff's failure-to-protect claim is also asserted against Gremminger in his individual capacity. "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Chavero-Linares*, 782 F.3d at 1041 (quotation marks and citation omitted). "Of course, prison officials do not commit a constitutional violation every time one prisoner attacks another." *Young v. Selk*, 508 F.3d 868, 871–72 (8th Cir. 2007) (citations omitted). "To prove unconstitutional failure to protect from harm, [a plaintiff] must show (1) an 'objectively, sufficiently serious' deprivation, meaning that [he] was incarcerated under conditions posing a substantial risk of serious harm, and (2) that the

defendant was deliberately indifferent to the substantial risk of serious harm." *Chavero-Linares*, 782 F.3d at 1041 (quotation marks and citations omitted).

To prove the objective prong, an inmate "must demonstrate that he suffered extreme deprivations, meaning that he was denied the minimal civilized measure of life's necessities." *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (quotation marks and citations omitted). An inmate's assault on another inmate constitutes "serious harm." *Jensen v. Clarke*, 94 F.3d 1191, 1198 (8th Cir. 1996). "When considering the first requirement, the assailant's conduct can provide the court the most probative evidence of the degree and type of risk that the inmate faced." *Nelson v. Shuffman*, 603 F.3d 439, 447 (8th Cir. 2010) (quotation marks and citation omitted).

To prove the deliberate indifference prong, the test "is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind.'" *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference is "more than ordinary lack of due care for the prisoner's interests or safety" and "describes a state of mind more blameworthy than negligence" but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835 (quotation marks and citations omitted). The prisoner must prove the official acted with "reckless disregard of the known risk" to his safety. *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (quotation marks and citation omitted).

Such reckless disregard is demonstrated only where an official "actually knows of the substantial risk and fails to respond reasonably to it." *Nelson*, 603

F.3d at 446 (quotation marks and citation omitted). This "is a subjective test; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Schoelch*, 625 F.3d at 1046 (quotation marks and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not violate the Eighth Amendment. *Farmer*, 511 U.S. at 838.

"An obvious risk of a harm justifies an inference a prison official subjectively disregarded a substantial risk of serious harm to the inmates." *Lenz*, 490 F.3d at 995. But an "inmate's history of violence alone is insufficient to impute to prison officials subjective knowledge of the inmate's danger to harm other inmates." *Holden*, 663 F.3d at 341 (citation omitted). "Courts must give substantial deference to prison officials to determine the best methods for dealing with dangerous inmates in the volatile environment that is prison life." *Id.* at 341–42 (quotation marks and citation omitted). A risk of inmate-on-inmate assault may be obvious where a "plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842.

Finally, an official with knowledge of such a risk incurs no "liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. A "prison guard who fail[s] to prevent an inmate assault because he [leaves] his post" is, without more, "merely negligent," and "is not liable under the Eighth Amendment" for the resulting injuries. *Newman v. Holmes*, 122 F.3d 650,

653 (8th Cir. 1997) (citation omitted).  To survive summary judgment on this inquiry, the prisoner must "produce[] enough evidence to question whether the measures taken to abate the risk to him were reasonable."  *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995).

Plaintiff has failed to introduce sufficient evidence to raise a genuine dispute of material fact on the claim of failure to protect.  As to the objective prong, no evidence of record shows that plaintiff was under any obvious threat of assault by his assailant or other inmates at any time before January 17, 2014.  *See Nelson*, 603 F.3d at 447.  There is no evidence that any risk that plaintiff would be assaulted was longstanding, pervasive, or expressly noted by plaintiff or any prison official, and no evidence here documents the existence of a risk of assault prior to January 17, 2014.  *See Farmer*, 511 U.S. at 842.  The assaults were one-off, spontaneous, unprecedented events that occurred in a short timeframe.  *See id.*  In such circumstances, insufficient evidence exists to show plaintiff was under an objective risk of harm.

As to the subjective prong, no evidence of record shows or gives rise to a reasonable inference that Gremminger was aware a risk of assault or failed to respond reasonably to it.  *See Nelson*, 603 F.3d at 446.  No reasonable jury could conclude that a risk of assault was obvious on the facts plaintiff alleges here.  The evidence does not show plaintiff had been assaulted before, that his assailant had attacked other inmates, or that any inmate had ever been attacked in Wing A, in the honor house.  *See Holden*, 663 F.3d at 341–42; *Lenz*, 490 F.3d at 995.  Plaintiff also admits he never told Gremminger he feared an assault or had been assaulted before January 17, 2014.  It is also undisputed Gremminger was not in Wing A

when any of the events occurred, and no evidence suggests he was aware of the events until after they concluded.  *See Farmer*, 511 U.S. at 838.  Thus, insufficient evidence exists from which a factfinder could conclude Gremminger knew of a risk to plaintiff.

Finally, even if such an objective risk existed and Gremminger knew of it, no evidence of record shows he failed to response reasonably to the risk.  *Farmer*, 511 U.S. at 844.  It is undisputed Gremminger had other duties in House 3 on January 17.  Plaintiff offers only supposition that Gremminger was not in Wing A because he had abandoned his post.  But even if that were true, on this record it would establish at most a negligent response to the highly theoretical risk to plaintiff.  *See Newman*, 122 F.3d at 653.  No reasonable jury viewing this evidence could conclude that Gremminger failed to respond reasonably to any hypothetical risk to plaintiff of which the officer was aware.  *See Reece*, 60 F.3d at 491.

***

For the reasons set forth above, the Court concludes that Gremminger is entitled to judgment as a matter of law on Count I.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment of defendant Broc Gremminger [Doc. #122] is **granted**.

Judgment will be entered in favor of defendant Broc Gremminger at the conclusion of all proceedings in this case.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of January, 2017.