UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES J. HAMILTON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:14-CV-766-CEJ ) |
| JONNA GRUBBS, et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Margaret Huff for summary judgment, pursuant to Fed. R. Civ. P. 56(a). The issues are fully briefed.

Plaintiff James J. Hamilton, an inmate confined at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri, brings this action pursuant to 42 U.S.C. § 1983. In Count VI of the fourth amended complaint, plaintiff claims that Huff, a corrections officer, was deliberately indifferent to his serious medical needs.

**I. Background**

On March 13, 2014, plaintiff was transferred from an administrative segregation unit in House 1 to an administrative segregation unit in House 2. Defendant Huff was one of the corrections officers assigned to House 2. Prior to his arrival, plaintiff was diagnosed with diabetic neuropathy, which causes pain and swelling of his feet if he ambulates without an assistive device. He was prescribed orthotic shoes to alleviate that pain and swelling.

It is undisputed that Huff confiscated plaintiff's prescribed orthotic shoes upon his arrival in House 2. In her affidavit, Huff states that prisoners in

administrative segregation are not allowed to have "regular shoes" and are instead given "special shoes" for safety reasons. She further states that an inmate who needs special shoes for medical reasons must obtain an "medical lay-in" from the prison medical staff. Finally, Huff states that she "was not aware of any particular medical need" of the plaintiff or of any risk to plaintiff's health or safety during his confinement in administrative segregation. [Doc. # 123-7, ¶¶ 4-6].

Plaintiff submits evidence that a medical lay-in was issued to him on February 14, 2014, allowing him to use "medical shoes" as a "required" "assistive device." The lay-in was valid for a one-year period. [Doc. # 69-2] . Plaintiff testified that he showed the lay-in to Huff and told her that he had been allowed to keep them when he was in administrative segregation in House 1. He also told her that if she took his shoes, his "feet [were] going to start burning" because of his diabetic neuropathy. [Doc. 123-10, p. 83] Nevertheless, Huff refused to allow plaintiff to have his medical shoes. Plaintiff further testified that he explained to Huff that he keeps his shoes on until he goes to sleep because he "cant' walk around on the concrete without them." *Id.* at pp. 83–84. He told her that he "can feel the pain" even when he has "to get up to use the bathroom," though admittedly not as much pain as when he is "walking around . . . for a long period of time." *Id.* Huff allegedly laughed in response and said, "you are not going to do too much walking around in the cell." *Id.*

Plaintiff was without his shoes for the duration of his confinement in House 2. He alleges he suffered foot inflammation and pain when he stood or walked in his cell during those weeks. He also maintains the pain and inflammation caused by ambulating without the shoes continued for "two to three months" after the shoes

2

were returned to him. *Id.* at 84. On April 10, 2014, plaintiff was transferred to administrative segregation in House 1, where the medical shoes were immediately returned to him.

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. Discussion

In Count VI, plaintiff asserts a § 1983 claim that Huff withheld prescribed treatment from him in deliberate indifference to his medical needs. The claim is brought against Huff in her individual capacity only. *See* [Doc. #89] (dismissing official capacity claim). Huff argues that she is entitled to summary judgment on the merits of this claim or, alternatively, to qualified immunity.

### A. Deliberate Indifference

"It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Gregoire*, 236 F.3d at 417 (citing *Estelle*, 429 U.S. at 104). "This is true whe[re] the indifference is manifested by . . . prison [officials] in . . . intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Deliberate indifference involves both an objective and subjective analysis. *Buckman*, 756 F.3d at 1065.

The objective component requires a prisoner to demonstrate an objectively serious medical need. *Id.* "A medical need is objectively serious if it . . . has been 'diagnosed by a physician as requiring treatment . . . .'" *Scott*, 742 F.3d at 340 (quoting *Coleman*, 114 F.3d at 784). It is undisputed that a physician diagnosed plaintiff with having diabetic foot neuropathy and a physician prescribed orthotic shoes as treatment for that serious medical condition. Huff states that she was not aware that plaintiff had any medical need. However, that statement is contradicted by plaintiff's testimony that he showed Huff the medical lay-in. Thus, there is a material factual dispute as to Huff's knowledge of plaintiff's serious medical need.

In her motion, Huff claims to have "relied on medical professionals when determining whether" plaintiff "could have specific shoes in his administrative

4

segregation cell." [Doc. #123 at 14–15] Huff makes no mention of this in her affidavit. She does not identify the medical professionals she relied on for that determination and no evidence of record shows that Huff consulted with any medical professional before or after she confiscated plaintiff's shoes. There is a material issue of fact as to whether Huff knew that the medical lay-in covered confinement in administrative segregation because plaintiff had been allowed to keep his medical shoes when he was in an administrative segregation cell in House 1.

Huff also argues that plaintiff's medical needs were not objectively serious because he has not demonstrated the effect of the delay in treatment. But the "submission of verifying medical evidence [is] unnecessary" where a "need for medical attention . . . would have been obvious to a layperson," an even lesser standard than where the need for treatment has, as here, been diagnosed. *Schaub v. VonWald*, 638 F.3d 905, 919 (8th Cir. 2011). And plaintiff claims Huff deliberately interfered with his treatment, not delayed it. *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) ("Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." (quotation marks and citation omitted)); *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) ("Prison officials cannot substitute their judgment for a medical professional's prescription." (citation omitted)).

The cases Huff relies on for support are thus inapposite, because they address the effect of delays in treatment where a condition is undiagnosed, diagnosed but unknown to the officer, or known to the officer but merely delayed. *See, e.g.*, *Laughlin*, 430 F.3d at 929; *Thomas v. Banks*, 584 F. App'x 291, 291 (8th

5

Cir. 2014) (holding a correctional officer was at most negligent for the delay obtaining new prescription shoes, where the prisoner's prescription shoes had been stolen by another inmate—not confiscated by the defendant—and where the prisoner's "medical authorization did not restrict him from work or from wearing sandals at work, and he did not submit evidence of the work environment or risks of injury from working in" non-prescription shoes). Those cases do not address a situation where, as alleged here, a correctional officer is both aware of a prisoner's prescribed assistive device, and the officer prevents the prisoner from using it. *See Miller v. Schoenen*, 75 F.3d 1305, 1310 (8th Cir. 1996) (rejecting summary judgment where the defendants afforded the prisoner no treatment, and dismissing their argument that the prisoner's having suffered no long-term harm meant the "treatment must have been adequate," where a jury could conclude that the prisoner "survived in spite of the defendants' inadequate treatment").

Further, the Eighth Circuit has said "a physician's diagnosis" of a condition means that the condition is by definition "supported by medical evidence," thus satisfying the objective component. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *see also Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006); *Johnson v. Hay*, 931 F.2d 456, 461 (8th Cir. 1991). Where a prisoner has a diagnosed medical condition, whether the prisoner is fortunate to survive unscathed appears to be immaterial when, as here, a correctional officer deliberately withholds, rather than delays, prescribed treatment. But even if plaintiff is required to show that confiscating his shoes had a deleterious effect on him, he alleges that he suffered significant, painful inflammation of his feet for nearly a month, with lingering pain for some time thereafter. *See Jackson*, 815 F.3d at 1120 n.5;

6

*Langford*, 614 F.3d at 460 (holding "[p]risoners may prove deliberate indifference by showing that the total deprivation of medical care resulted in pain and suffering" (quotation marks and citation omitted)).

Huff has not disputed that pain and inflammation are the natural consequences of a person with diabetic foot neuropathy having to stand or walk on the concrete floor of a prison cell without orthotic shoes for support. *See Majors v. Baldwin*, 456 F. App'x 616, 617 (8th Cir. 2012) (acknowledging a prisoner's "complaints of pain" can make even an undiagnosed condition "so obvious that a layperson would easily recognize" it, *i.e.*, objectively serious (citation omitted)). Nor has Huff suggested plaintiff did not need to stand and walk in his cell, *i.e.*, that he was expected to exclusively lie in bed and to crawl on the floor to reach the toilet, exercise, obtain food, or carry out his other activities. *See Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980) (holding that a prisoner's allegation that he was deliberately deprived of an ambulatory device, and was thus "forced to crawl on the floor," stated an Eighth Amendment claim). Therefore, at minimum, a genuine dispute of material fact remains from which a reasonable jury might conclude that plaintiff had a diagnosed, objectively serious medical need that required treatment with the prescribed shoes at all times.

As to the subjective component, plaintiff must show "that the defendant actually knew of, but deliberately disregarded," his objectively serious medical need. *McRaven*, 577 F.3d at 980 (quotation marks and citation omitted). The subjective component requires "a mental state akin to criminal recklessness." *Vaughn*, 557 F.3d at 908 (quotation marks and citation omitted). "[T]he knowing failure to administer prescribed medicine can itself constitute deliberate

7

indifference." *Phillips*, 437 F.3d at 796. Consequently, if Huff knew of plaintiff's prescription for the shoes and was at least the equivalent of criminally reckless in confiscating them, a reasonable jury might find her deliberately indifferent for interfering with that prescribed treatment. *See id.*

With respect to the actual knowledge prong, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." *Bender*, 385 F.3d at 1137 (quoting *Farmer*, 511 U.S. at 837). Correctional officers "cannot substitute their judgment for a medical professional's prescription." *Meloy*, 302 F.3d at 849 (citation omitted). Thus, a prison official is "not entitled to summary judgment on a prisoner's" Eighth Amendment "claim based on the prisoner's allegations that the defendant[] deliberately denied him access to medical care and failed to carry out treatment prescribed by his doctors." *Johnson*, 931 F.2d at 461.

The inquiry is whether Huff knew of plaintiff's prescription and knew that prescription required him to have access to the shoes even while confined in administrative segregation. *See Krout v. Goemmer*, 583 F.3d 557, 568 (8th Cir. 2009) ("Examination of facts known to the prison officials is necessary in order to determine whether a reasonable official would have known that his failure to take some particular action to protect the inmate would violate that law."). Circumstantial evidence is admissible to determine this factual inquiry. *See Walton*, 752 F.3d at 1119. To survive summary judgment, "[i]t is sufficient to show that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (quotation marks and citation omitted); *Coleman*, 114 F.3d at 786

(holding knowledge may be inferred where a medical condition is "well-documented" or "expressly noted by prison officials," *e.g.*, in a medical lay-in, and "the circumstances suggest" the defendant "had been exposed to" that information).

Huff claims not to have been aware of plaintiff's medical condition, his prescription, or the consequences of withholding treatment. Plaintiff testified Huff was aware of all of those facts: he told her of his condition and, drawing reasonable inferences in his favor, she read the medical lay-in when he handed it to her. The medical lay-in says the shoes are required prescription items, and required without limitation. [Doc. #69-2] Also, plaintiff states that he described to Huff the pain and inflammation he would experience without the shoes. *See Jones v. Faulkner Cty.*, 609 F. App'x 898, 900 (8th Cir. 2015) (recognizing a deliberate indifference claim where, *inter alia*, an official was aware of a prisoner's need for medication but "intentionally interfered with treatment by withholding the medication"); *Olson v. Bloomberg*, 339 F.3d 730, 738 (8th Cir. 2003). Huff's contention that she lacked the requisite knowledge raises a genuine dispute of material fact.

Even if a prisoner "satisfies the subjective awareness prong, [an] officer[] may be found free from liability if [she] responded reasonably to the risk, even if the harm ultimately was not averted." *Krout*, 583 F.3d at 567–68; *see Letterman*, 789 F.3d at 862; *Dulany*, 132 F.3d at 1240 (applying this inquiry in the context of medical needs). A "plaintiff must show the official knew that their conduct was inappropriate in light of the risk to the prisoner. . . . Generally, the actor manifests deliberate indifference by . . . intentionally interfering with treatment or medication that has been prescribed." *Letterman*, 789 F.3d at 862 (quotation marks and

9

citation omitted). "When evaluating whether an actor deliberately disregarded a risk, [courts] consider his actions in light of the information he possessed at the time, the practical limitations of his position and alternative courses of action that would have been apparent to an official in that position." *Id.* (quotation marks and citation omitted). Courts "focus on the mind of the prison official and the information at his disposal, not the thoughts of third-party actors who do not disclose their thoughts." *Id.* at 863 (citation omitted). To survive summary judgment on this inquiry, the prisoner must "produce[] enough evidence to question whether the measures taken to abate the risk to him were reasonable." *Reece*, 60 F.3d at 491; *see Pietrafeso v. Lawrence Cty.*, 452 F.3d 978, 983 (8th Cir. 2006) (holding an official's mistake in withholding prescribed medications does not prove deliberate indifference); *Dasta v. LeBlanc*, 132 F. App'x 98, 100 (8th Cir. 2005).

A prison official is not rendered "immune from liability for his personal involvement in an alleged constitutional violation" merely because he is "not a physician and is not engaged in" a prisoner's "day to day medical care." *Langford*, 614 F.3d at 462 (quotation marks and citation omitted). Consequently, the refusal to carry out a prisoner's prescribed course of treatment or alleged confusion about whether one is obligated to do so is, without more, insufficient to obtain summary judgment. *See Erickson v. Holloway*, 77 F.3d 1078, 1080–81 (8th Cir. 1996) (holding a prison official's alleged refusal to carry out a physician's prescribed course of treatment required a trial). To avoid violating plaintiff's rights Huff need only have refrained from confiscating the shoes. Huff's decision to confiscate the shoes thus raises a reasonable inference that she deliberately disregarded plaintiff's

need for his prescription treatment by taking intentional steps to deprive him of it. *See Foulks v. Cole Cty.*, 991 F.2d 454, 457 (8th Cir. 1993) (holding that "if a reasonable official would have known that" a prisoner required treatment, "the refusal to provide access to the treatment . . . constitute[s] deliberate indifference").

Huff suggests a reasonable jury could not conclude she exhibited the equivalent of at least criminal recklessness because prison policy, orders issued by a senior prison official, and security concerns justified confiscating the shoes. *See Letterman*, 789 F.3d at 862–63. Where prison officials enact a policy and "proffer[] good reasons" based on "rational safety measures for inmates" to enforce that policy, the "officials' refusal to deviate from [the] policy [does] not constitute deliberate indifference or some other unconstitutional conduct." *Turner*, 784 F.3d at 490. But a prison official cannot hide behind a policy or practice that, based on facts of which the official was aware, would deprive a prisoner of his constitutional rights. *See Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) (affirming denial of summary judgment and qualified immunity where, *inter alia*, an official knew a prisoner had an objectively serious heart condition but nevertheless required the prisoner to climb stairs because the prisoner had not obtained explicit medical documentation that he could not ascend stairs). The difficulty with this argument is that Huff has submitted no prison policy that requires a medical lay-in to specifically state that it is applicable even when an inmate is in administrative segregation. She also presents no evidence that any senior prison official issued an order prohibiting inmates from keeping medically-prescribed shoes in their

11

administrative segregation cells.  Likewise, the security concern presented by plaintiff's medical shoes has not been clearly articulated.

Huff's failure to present evidence of prison policy, an official order, or legitimate security concerns also raises a fact question as to her intent.  *See Turner*, 784 F.3d at 490.  A reasonable jury could conclude that Huff "intentionally, not inadvertently," withheld plaintiff's shoes because she did not "request a prison doctor to examine [plaintiff] to determine the appropriateness of the" prescription, did not "advise any doctor that [s]he intended to withhold" the treatment, and did not "contact the originally diagnosing physician" before confiscating the shoes. *Johnson*, 931 F.2d at 461–62; *see Letterman*, 789 F.3d at 862–63.

For the reasons discussed above, the Court finds that genuine disputes of material fact remain as to each required element of plaintiff's deliberate indifference claim against Huff.  Therefore, she is not entitled to summary judgment.

### B. Qualified Immunity

"Qualified immunity shields government officials from civil liability insofar as their conduct in performing discretionary functions 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Meehan v. Thompson*, 763 F.3d 936, 940 (8th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity provides ample room for mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."  *Id.* (quotation marks and citations omitted). "To overcome the defense of qualified immunity the plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly

12

established at the time of the deprivation." *Id.* (quotation marks and citations omitted).

As to the first prong, "whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law." *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999) (citation omitted). But "[i]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Gregoire*, 236 F.3d at 417 (quotation marks and citation omitted). "When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011) (citation omitted).

"When an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment" deliberate indifference claims, "and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff 'must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.'" *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998)). Circumstantial evidence is admissible for this purpose. *See Walton*, 752 F.3d at 1119.

For the reasons discussed above, genuine issues of material fact preclude summary judgment. Viewing the facts in the light most favorable to plaintiff, drawing all reasonable inferences in his favor, and leaving credibility determinations to the trier of fact, a reasonable jury might conclude on this record that Huff was

13

deliberately indifferent to plaintiff's diagnosed condition when she confiscated his shoes. *See Letterman*, 789 F.3d at 862; *Langford*, 614 F.3d at 460; *Phillips*, 437 F.3d at 796; *Johnson*, 931 F.2d at 461; *see also Jones*, 609 F. App'x at 900; *Majors*, 456 F. App'x at 617. A genuine dispute exists over Huff's motive for confiscating the shoes. *See Burns*, 752 F.3d at 1139; *Gordon*, 454 F.3d at 864 ("A medical assessment does not justify qualified immunity when officers ignore it."). Thus, a genuine dispute of material fact exists whether Huff deprived plaintiff of a constitutional right. *See Meehan*, 763 F.3d at 940; *Gregoire*, 236 F.3d at 417.

As to the second prong, plaintiff must also establish that the right at issue was clearly established by March 2014. *Meehan*, 763 F.3d at 940; *see Pearson v. Callahan*, 555 U.S. 223 (2009). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Meehan*, 763 F.3d at 940 (quotation marks, bracketing, and citation omitted). The official's conduct is evaluated "from the perspective of a reasonable officer on the scene possessing the same information." *Id.* (quotation marks and citation omitted). "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quotation marks and citation omitted).

"This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Capps v. Olson*, 780 F.3d 879, 885–86 (8th Cir. 2015) (quotation marks, citation, and ellipses omitted). But for "a constitutional right to be clearly established, there does not have to be a previous case with exactly the same factual issues." *Id.* at 886 (quotation marks and

14

citation omitted).  "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question . . . ."  *Id.* (quotation marks and citation omitted).  The very action in question need not have been previously held unlawful.  *Chambers*, 641 F.3d at 908.  "Hence, the issue is not whether prior cases present facts substantially similar to the present case but whether prior cases would have put a reasonable officer on notice that the" officer's action "in these circumstances would violate" a plaintiff's clearly established constitutional right.  *Capps*, 780 F.3d at 886 (quotation marks and citation omitted).  "'[I]n an obvious case, [general] standards can clearly establish the answer, even without a body of relevant case law.'"  *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

Huff contends that plaintiff "does not have a clearly established right to have special shoes in administrative segregation without medical permission."  [Doc. #123 at 14–15]  As discussed, plaintiff had medical permission to have his prescription shoes without limitation, including in administrative segregation; or, at minimum, a factual dispute exists on that issue.  However, the issue here is not whether plaintiff was entitled to have "special shoes," but whether he had the right to continue a medically-prescribed course of treatment without interference by a prison guard.  Nearly three decades before March 2014, the Supreme Court held "that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Gregoire*, 236 F.3d at 417 (citing *Estelle*, 429 U.S. at 104).  It was also then clearly established that the contours of the right to be free from cruel and unusual

15

punishment include an absolute prohibition on a correctional officer "intentionally interfering with" medical "treatment once prescribed." *Estelle*, 429 U.S. at 104–05; *see Johnson*, 931 F.2d at 461 (denying qualified immunity).

Huff is not entitled to qualified immunity because genuine factual disputes remain as to whether she was deliberately indifferent to plaintiff's serious medical needs, in violation of the Eighth Amendment, and because the constitutional prohibition against interference with medical treatment was clearly established at the time of the alleged violation. Therefore, the plaintiff's claim in Count VI will proceed.

\* \* \* \* \*

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Margaret Huff for summary judgment [Doc. #122] is **denied**.

An order setting the case for trial on plaintiff's claim in Count VI of the fourth amended complaint will be issued separately.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of January, 2017.