## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES J. HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-00766 CEJ |
| | ) | |
| TERRY RUSSELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' TRIAL BRIEF**

Defendant Margaret Huff ("Defendant"), by and through counsel, submits the following Trial Brief pursuant to the Order Relating to Trial entered by the Court on January 31, 2017. [ECF Document No. 137].

**I.    Factual Background**

On March 14, 2014, offender James Hamilton ("Hamilton") was transferred from an administrative segregation unit in Housing Unit 1 (HU1) to an administrative segregation unit in Housing Unit 2 (HU2) at Eastern Reception and Diagnostic Correctional Center ("ERDCC"). Corrections Officer (COI) Margaret Huff was *one* of the corrections officers assigned to HU2 in March of 2014.

Plaintiff alleges that when he arrived at HU2 at ERDCC, Defendant Margaret Huff confiscated his medical shoes despite the fact that he had a

medical lay-in approving his possession of the shoes. Plaintiff brings this §1983 action claiming that COI Huff was deliberately indifferent to his serious medical need in violation of his rights.

## II. Factual Issues

The primary factual issues to be decided at trial are: (a) Whether Plaintiff had a serious medical need; (b) whether Defendant Huff knew of Plaintiff's serious medical need; and (c) whether Defendant Huff was deliberately indifferent to Plaintiff's serious medical need in violation of his Constitutional rights when and if she confiscated his shoes.

The credible evidence will show that while Defendant Huff has no memory of whether she confiscated Plaintiff's medical shoes upon his arrival at HU2, it is highly unlikely that she would have been the one to confiscate his shoes. Upon arrival at HU2, all inmates are strip searched. During the strip search, all their property that is disallowed in administrative segregation is taken from them – along with any medical items deemed unnecessary. Per best practices within the prison, only male COIs perform strip searches of male inmates and as such, Defendant Huff would not have participated in any strip search of Plaintiff upon his arrival in HU2. The credible evidence will show that it is highly unlikely that Defendant Huff ever confiscated Plaintiff's shoes.

The evidence will also show that Defendant Huff spoke with Plaintiff about his shoes at an indeterminate time during his stay in HU2. During this conversation, Plaintiff asserted that he was entitled to his medical shoes and that he had a medical lay-in to prove it.  The evidence will show that Defendant Huff spoke to her supervisor and that Defendant Huff's supervisor called the medical unit to have them advise regarding whether Plaintiff was entitled to have his medical shoes in his administrative segregation cell. The evidence will show that COI Huff was informed that medical personnel determined that Plaintiff was not entitled to have his medical shoes in his cell in administrative segregation and that Defendant Huff followed the orders given to her by medical personnel at the prison.

Plaintiff will not be able to prove that Defendant Huff confiscated his medical shoes. Nor will Plaintiff be able to prove that Plaintiff suffered from a serious medical need to wear his medical shoes in his administrative segregation cell. Finally, Plaintiff will not be able to prove that Defendant Margaret Huff was in any way deliberately indifferent to his allegations that he suffered from a serious medical need and required his medical shoes in his administrative segregation cell.

### III. <u>Legal Issues</u>

    **a. Deliberate Indifference to an alleged serious medical need Claim**

"To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999). Deliberate indifference requires more than mere negligent misconduct; it requires a mental state akin to criminal recklessness. *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003); *see also Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000).

> i. *Plaintiff cannot show that he suffered from an objectively serious medical need.*

A medical condition is "objectively serious" if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the medical need. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). If not obvious to a lay person, then there must be medical evidence in the record to support any finding of a serious medical need. *Aswegan v. Henry*, 49 F.3d 461, 464-65 (8th Cir. 1995). A self-diagnosis alone is insufficient to support a finding of a serious medical need. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994). Courts have noted that the "8th Circuit has a very conservative outlook on what constitutes a serious medical need." *Caldwell v. Palmer*, No. 12-CV-4115-DEO, 2014 WL 2573317 at *5 (N.D. Iowa 2014).

Plaintiff has failed to show that he had a serious medical need to have his medical shoes in his administrative segregation cell in this case. Plaintiff's alleged

serious medical need appears to be that he suffers from pain in his feet without his shoes. However, Plaintiff will not be able to show that being without his shoes while in administrative segregation constitutes a serious medical need. Plaintiff further will not be able to show that his shoes are a medical necessity in general rather than a comfort, specifically in his administrative segregation cell. Furthermore, foot pain would not be so obvious that a lay person would recognize such as a serious medical need. *See Saylor*, 812 F.3d at 644. And finally, Plaintiff will not be able to prove that he was ever formally diagnosed with diabetic neuropathy or that the shoes provided to him assist in curing or easing diabetic neuropathy.

> ii. *Plaintiff cannot show that Defendant Huff knew of any, alleged objectively serious medical need.*

While the Plaintiff states that he had a medical lay-in stating that he should be allowed to have his shoes, as this Court has noted, "a [medical] lay-in order 'is not the same as showing a serious medical condition." *Haley v. CMS*, No. 1:09-CV-144-SNLJ, 2012 WL 4108924 at *7 (E.D. Mo. 2012) (quoting *Rothman v. Lombardi*, No. 4:11-CV-639-CEJ, 2011 WL 1743831 at *2 (E.D. Mo. 2011). Furthermore, Plaintiff has no proof that Defendant Huff ever saw or came into contact with his medical lay-in. Plaintiff's lay-in does not state that Plaintiff had a medical reason that he could not use the state-issued safety-shoes provided in HU2 Administrative Segregation. Plaintiff's lay-in does not state that Plaintiff had a medical reason to take his shoes with him into his cell in HU2 Administrative Segregation. Further, when Defendant Huff's supervisor checked with medical personnel, they were

informed that Plaintiff did *not* need to have his medical shoes in his administrative segregation cell. As such, Defendant Huff would be supported in going forward on the fact that Plaintiff did not have an objectively serious medical need to have his medical shoes in his administrative segregation cell.

> iii. *Plaintiff cannot show that Defendant Huff was deliberately and indifferently disregarded any alleged serious medical need.*

In *Thomas v. Banks*, the plaintiff claimed a corrections officer forced him to work in shower shoes after his medically prescribed shoes had been stolen. No. 5:12CV00359-JJV, 2014 WL 121302, at *2 (E.D. Ark. Jan. 1, 2014), *aff'd*, 584 F. App'x 291 (8th Cir. 2014). The District Court found that the plaintiff could not show that the corrections officer knew or should have known that requiring the plaintiff to work in shower shoes exposed "him to an excessive risk to his safety." *Id.* Although the corrections officer may have been negligent, his conduct did not "rise to the level of deliberate indifference." *Id.*

Here, Defendant Huff's actions do not even come close to the level of deliberate indifference. Offenders are not permitted to have regular shoes while in administrative segregation for safety and security reasons. Offenders are rarely, *if ever* allowed to have special, medical shoes in their administrative segregation cells. Medical staff, not custody staff, determines whether an offender can have such special medical shoes in his cell.

Here, even if Plaintiff had a medical lay-in for his diabetic shoes, the evidence will show that Defendant Huff never saw the lay-in. Also, after being alerted by Plaintiff that he possibly had a lay in for medical shoes, the evidence will show that Defendant Huff conferred with her functional unit manager who then called medical personnel. Medical staff dictated to Defendant Huff's functional unit manager that Plaintiff was not entitled to have his shoes in administrative segregation. It is well established that custody staff can rely on the determinations made by medical staff. *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009).

### b. Qualified Immunity

"Qualified immunity shields a government official from liability when his conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982)). To determine whether qualified immunity applies, courts examine two factors: 1) whether there has been a violation of a constitutional or statutory right, and 2) whether the right was clearly established "such that a reasonable official would have known that his actions were unlawful." *Id.* (citing *Pearson v. Callahan* 555 U.S. 223, 232 (2009)).

"As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate

the law." *Malley v. Briggs*, 475 U.S. 335, 335-36 (1986). Qualified immunity provides leeway for mistaken judgments. *Id.* at 343; *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). While Plaintiff's right to proper medical treatment is clearly established, there exists no clearly established right to have special medical shoes in his administrative segregation cell and Defendant Huff would have no way of knowing that her actions in following the directives of medical personnel and prison policy constituted a violation of Plaintiff's Constitutional rights. Further, Plaintiff is unable to prove that there was any constitutional violation on Defendant Huff's part.

    Defendant Huff did all that she could to ensure that Plaintiff's constitutional right to medical treatment was upheld. Defendant Huff has no memory of confiscating Plaintiff's shoes and believes that she would not be the one who confiscated Plaintiff's shoes upon his arrival in administrative segregation in March of 2014. Plaintiff's shoes would have been taken when he was "stripped out" upon his arrival to administrative segregation in Housing Unit 2. Only males strip out male inmates and thusly, Defendant Huff would not have performed the strip-out of Plaintiff.

    Defendant Huff does remember an argument with Plaintiff over his shoes, after which Defendant Huff followed up with her functional unit manager who called medical to determine whether Plaintiff needed his shoes in their housing unit. Medical personnel reported back that, in fact, Plaintiff

did not need his medical shoes in his cell in administrative segregation. Thus, Defendant Huff believed she was following policy and medical orders from those who knew better. It is well established that custody staff can rely on the determinations made by medical staff. *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009). By relying on medical staff, there is no possible way that Defendant Huff would have known that her actions would have resulted in a violation of Plaintiff's constitutional rights.

## Conclusion

The Plaintiff will not be able to show that Defendant Huff violated Plaintiff's Constitutional rights. Plaintiff's claims are unsupported and Defendant Huff is not liable.

**JOSHUA D. HAWLEY**
Missouri Attorney General

/s/ *Chelsea W. Draper*
Chelsea W. Draper
Missouri Bar No. 64824
Assistant Attorney General
Missouri Attorney General's Office
P.O. Box 861
St. Louis, MO 63188
Phone:  (314) 340-3432
Fax:  (314) 340-7029
Email: Chelsea.Draper@ago.mo.gov

*Attorneys for Defendant Margaret Huff*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 21, 2017, the foregoing was filed electronically with the Clerk of the Court to be served upon all parties by operation of the Court's electronic filing system.

                                      */s/Chelsea W. Draper*
                                      Chelsea W. Draper
                                      Assistant Attorney General